IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

FIVE POINTS MANAGEMENT GROUP, INC., a California corporation,

Plaintiff,

v.

CAMPAIGN, INC., a Delaware corporation; and
BRADLEY SEWELL, an individual,

Defendants.

---

## COMPLAINT

---

Five Points Management Group, Inc. ("**Plaintiff**"), by and through its

counsel, the Ito Law Group, P.C., files this Complaint alleging as follows:

1.      This is an action for breach of contract and breach of guaranty.

## I.
## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over this matter pursuant to 28

U.S.C. § 1332(a)(1) (Diversity of Citizenship and Amount in Controversy).

Plaintiff is a citizen of the State of California and its principal place of business is

in California.  Defendant Campaign, Inc. ("**Campaign**") is a Delaware

corporation.  Defendant Bradley Sewell ("**Mr. Sewell**," together with Campaign,

the "**Defendants**") is a resident of the State of Colorado by virtue of being domiciled in the State of Colorado. The amount in controversy exceeds $75,000, exclusive of interests, costs and attorneys' fees.

3.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1). Campaign is a resident in the State of Colorado as it has consented to suit in this jurisdiction by obtaining a certificate to transact business in the State of Colorado and designating a registered agent for service of process in the State of Colorado. Mr. Sewell is a resident of the State of Colorado by virtue of being domiciled in the State of Colorado.

## II.
## PARTIES

4.      Plaintiff is a corporation organized and existing under the laws of the State of California with its principal place of business located Emeryville, California.

5.      Campaign is a corporation organized and existing under the laws of the State of Delaware.  On May 26, 2020, Campaign filed a Statement of Foreign Entity Authority ("**Statement of Foreign Entity Authority**") with the Colorado Secretary of State as Document No. 20201462077.  Pursuant to the Statement of Foreign Entity Authority, Campaign has designated a registered agent for service of process in the State of Colorado.

6.      Mr. Sewell is a resident of the State of Colorado.

### III.
### FACTS

**A.      Campaign is a Party to a Commercial Real Estate Sublease with Plaintiff**

7.      Pursuant to that certain Standard Industrial/Commercial Single-Tenant Lease—Net ("**Master Lease**") dated March 1, 2017, Plaintiff leased from Forest Hills Development LLC (the "**Lessor**") the premises located at 4052 Watts Street, Emeryville, California 94606 (the "**Premises**").  A true and correct copy of the Master Lease is attached hereto as Exhibit "1" and incorporated herein by this reference.

8.      Pursuant to that certain Air Commercial Real Estate Association Standard Sublease dated March 1, 2017 and addendums thereto dated March 1, 2017, June 22, 2017, April 26, 2018 and March 12, 2019 (collectively, the "**Sublease Agreement**"), Campaign subleased the Premises from Plaintiff.  A true and correct copy of the Sublease Agreement and various addendums is attached hereto as Exhibit "2" and incorporated herein by this reference.

9.      In his capacity as Chief Executive Officer, Mr. Sewell executed the Sublease Agreement on behalf of Campaign.

10. The term of the Sublease Agreement was ten (10) years commencing on March 1, 2017 and ending on February 28, 2027 ("**Expiration Date**").

**B.     Mr. Sewell Guaranteed the Sublease Agreement**

11. Pursuant to paragraph 1.9 of the Sublease Agreement, Mr. Sewell agreed to guaranty (the "**Guaranty**") the obligations of Campaign under the Sublease Agreement.

12. In his capacity as guarantor, Mr. Sewell executed the Sublease Agreement.

**C.     Sublease Agreement Was Terminated Pursuant to Lease Termination Agreement**

13. Campaign requested that the Sublease Agreement be terminated prior to the Expiration Date.

14. Plaintiff agreed, subject to certain terms and conditions, to terminate the Sublease Agreement prior to the Expiration Date.

15. The terms and conditions imposed by Plaintiff as part of its agreement to terminate the Sublease Agreement prior to the Expiration Date are set forth in a Lease Termination Agreement dated March 10, 2020 ("**Lease Termination Agreement**") and an Addendum to Lease Termination Agreement dated April 1, 2020 ("**Addendum**").  A true and correct copy of the Lease Termination Agreement and Addendum are attached hereto and incorporated herein by this reference as Exhibits "3" and "4."

16.     Campaign signed the Lease Termination Agreement, by and through its president Mr. Sewell.  Mr. Sewell, in his capacity as guarantor, executed the Lease Termination Agreement.  Plaintiff, by and through its president James McGoey, executed the Lease Termination Agreement and Addendum.  Neither Campaign nor Mr. Sewell executed the Addendum.

17.     Pursuant to the terms and conditions of the Lease Termination Agreement and Addendum, Campaign and Mr. Sewell agreed, among other things, to the following:[1] (i) terminate the Sublease Agreement effective as of March 10, 2020, (ii) vacate and deliver possession of the Premises to Plaintiff on April 15, 2020 at 5:00 p.m., (iii) allow Plaintiff to retain the security deposit paid by Campaign in the amount of $26,038, and (iv) within seven (7) days of the date of the Lease Termination Agreement to pay Plaintiff the amounts set forth in paragraph 6 of the Lease Termination Agreement.

---

[1] If there are any conflicts between the terms and conditions of the Lease Termination Agreement as described herein and the Lease Termination Agreement, the terms and conditions of the Lease Termination Agreement shall govern.

18.     As part of the Lease Termination Agreement, Plaintiff agreed to "use reasonable efforts to relet the Premises and enter into a lease with a Replacement Tenant upon terms satisfactory to [Plaintiff] (the '**Replacement Lease**')."

19.     In further consideration for Plaintiff's agreement to terminate the Sublease Agreement prior to the Expiration Date, Campaign agreed to the following:

> (a)     until a Replacement Lease is executed and the payment of monthly rent to [Plaintiff] commences under the Replacement Lease, [Campaign] shall pay to [Plaintiff] the amounts that would have been due to [Plaintiff] as Rent under the Sublease [Agreement], when and as those amounts would have been due had the Sublease not terminated pursuant to this [Lease Termination ]Agreement; and (b) in the event that the amount of total Rent to be paid to [Plaintiff] under the Replacement Lease for the term of the Replacement Lease, after taking into account the cost of any Tenant Improvements to be paid for by [Plaintiff], is less than the amount of Rent that would have been due to [Plaintiff] for the balance of the Term of the Sublease [Agreement] had it not been terminated pursuant to this [Lease Termination] Agreement, [Campaign] shall pay the difference to [Plaintiff] upon the commencement of the payment of monthly rent to [Plaintiff] under the Replacement Lease.

*See* Lease Termination Agreement, ¶ 8.

20.     In further consideration for Plaintiff's agreement to terminate the

Sublease Agreement prior to the Expiration Date, Mr. Sewell agreed to the

following:

> This [Lease Termination] Agreement shall not be deemed
> to exonerate or release Sewell's guarantee of
> [Campaign's] obligations under the Sublease
> [Agreement] other than those released by this [Lease
> Termination] Agreement, and this [Lease Termination]
> Agreement shall constitute Sewell's unconditional
> guarantee of [Campaign's] obligations under this [Lease
> Termination] Agreement.

*See* Lease Termination Agreement, ¶ 15.

21.     Plaintiff has been unable, despite its best efforts, to secure a

Replacement Lease.

**D.     Campaign and Mr. Sewell Have Failed to Perform Their Obligations
Under the Lease Termination Agreement and, As a Result, A Default
Has Occurred**

22.     The Lease Termination Agreement defines a default as follows:

> The failure by [Campaign] to perform any obligation
> under this [Lease Termination] Agreement, including its
> obligation to deliver the Premises, and its obligation to
> pay monies it is obligated to pay under this [Lease
> Termination] Agreement when and as due, shall
> constitute a breach of this [Lease Termination]
> Agreement without further notice or demand, and entitle
> [Plaintiff] to recover from [Campaign] an amount equal
> to the amount [Plaintiff] would have a right to recover
> under paragraph 13.2 of the Master Lease incorporated
> into the Sublease [Agreement] through paragraph 6.4 had
> the Sublease [Agreement] not terminated pursuant to this
> [Lease Termination] Agreement, in addition to any and

> all other rights and remedies [Plaintiff] may have under this [Lease Termination] Agreement or at law or in equity.

*See* Lease Termination Agreement, ¶ 9.

23.    The defined term "Rent" is defined as "[a]ll monetary obligations of Sublessee to Sublessor under the terms of this Sublease (except for the Security Deposit) are deemed to be rent ('**Rent**') (emphasis in original)." *See* Sublease, ¶ 4.1.

24.    The Sublease provides that Campaign shall pay the following utilities: "Sublessee shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises, together with any taxes thereon."  *Id*. at ¶ 4.2.

25.    The Sublease provides that Campaign shall pay all real property taxes and insurance.  Paragraph 6.3 of the Sublease provides that "[d]uring the term of this Sublease and for all periods subsequent for obligations which have arisen prior to the termination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor and Master Lessor, each and every obligation of Sublessor under the Master Lease except for the following paragraphs which are excluded therefrom: N/A." *See* Sublease, ¶ 6.4. Paragraph 10.2 of the Master Lease provides that "[i]n addition to Base Rent, Lessee shall pay to Lessor an amount equal to the Real Property Tax installment

due at least 20 days prior to the applicable delinquency date." Paragraph 8 of the Master Lease provides that "Lessee shall pay for all insurance required under Paragraph 8 except to the extent of the cost attributable to liability insurance carried by Lessor under Paragraph 8.2(b) in excess of $2,000,000 per occurrence.

26.     Pursuant to Addendum No. 1 dated March 1, 2017, the Base Rent for the period of March 1, 2020 to February 28, 2020 was $20,578 per month.

27.     Pursuant to the Addendum dated for reference purposes only as April 26, 2018, Campaign agreed to pay Deferred Rent of $2,058.42 in forty-eight (48) equal monthly installments.

28.     On August 19, 2020, Plaintiff notified Campaign and Mr. Sewell that a default had occurred under the Lease Termination Agreement and demanded payment within seven (7) days ("**Notice of Default and Demand for Payment**"). A true and correct copy of the Notice of Default and Demand for Payment is attached hereto as Exhibit "5" and incorporated herein by this reference.

29.     Despite demand by Plaintiff, Campaign has failed to perform its obligations under the Lease Termination Agreement by failing to make the following payments to Plaintiff, which total $2,219,276.52:

|  | Base Rent | Deferred Rent | Utilities | Property Taxes | Insurance |
|---|---|---|---|---|---|
| **3/1/2019 to 2/28/2020:** |  | $2058.42 |  |  |  |
| **3/1/2020 to 2/28/2021:** | $246,936 | $24,701.04 | $346.06 | $30,505 | $3,349 |
| **3/1/2021 to 2/28/2022:** | $256,812 | $24,701.04 |  | $26,507.52 | $3,349 |
| **3/1/2022 to 2/28/2023:** | $267,084 | $4116.84 |  | $26,507.52 | $3,349 |
| **3/2/2023 to 2/28/2024:** | $277,764 |  |  | $26,507.52 | $3,349 |
| **3/1/2024 to 2/28/2025:** | $288,876 |  |  | $26,507.52 | $3,349 |
| **3/1/2025 to 2/28/2026:** | $300,432 |  |  | $26,507.52 | $3,349 |
| **3/1/2026 to 2/28/2027:** | $312,456 |  |  | $26,507.52 | $3,349 |
| **Total:** | $1,950,360 | $55,577.34 | $346.06 | $189,550.12 | $23,443 |

30.     Until a Replacement Lease is secured by Plaintiff, rent, deferred rent, utilities, property taxes and insurance continue to accrue.

31.     Despite demand by Plaintiff, Mr. Sewell has failed to perform his obligations under the Guaranty and Lease Termination Agreement by failing to make the payments owing by Campaign as identified in paragraph 29 of this Complaint.

32.     Pursuant to paragraph 16 of the Lease Termination Agreement, "[i]f a party initiates legal proceedings to enforce its rights under this Agreement, the prevailing party shall be entitled to reimbursement of its reasonable attorney fees, costs, expenses and disbursements from the other Party or Parties."

33.     As of the date of this Complaint, there remains an unpaid balance due from Defendants to Plaintiff in the amount of no less than $2,219,276.52 plus interest, fees (including attorneys' fees), costs and expenses.

**COUNT ONE**
**Breach of Contract**
**(Against Campaign)**

34.     Plaintiff re-alleges and incorporates paragraphs 1 through 33 above as if fully set forth herein.

35.     The Lease Termination Agreement represents a written contract by and between Plaintiff, on the one hand, and Campaign, on the other.

36.     Plaintiff has fully performed all conditions precedent to Campaign's contractual obligation to make payment.

37.     Plaintiff has demanded payment from Campaign.

38.     Campaign has failed and refused to make payment.

39.     Campaign's failure to pay Plaintiff as required under the Lease

Termination Agreement represents a breach of the Lease Termination Agreement

and, as a result of said breach, Plaintiff has been damaged.

40.     By reason of the foregoing, Plaintiff is entitled to a judgment against

Campaign for breach of contract and damages in the amount of no less than

$2,219,276.52 plus interest, fees (including attorneys' fees), costs and expenses.

### COUNT TWO
### Breach of Guaranty
### (Against Mr. Sewell)

41.     Plaintiff re-alleges and incorporates paragraphs 1 through 40 above as

if fully set forth herein.

42.     The Guaranty and Lease Termination Agreement represent a written

contract by and between Plaintiff, on the one hand, and Mr. Sewell, on the other.

43.     Plaintiff has fully performed all conditions precedent to Mr. Sewell's

contractual obligation to make payment.

44.     Plaintiff has demanded payment from Mr. Sewell.

45.     Mr. Sewell failed and refused to make payment.

46.     Mr. Sewell's failure to pay Plaintiff as required under the Guaranty

and Lease Termination Agreement represent a breach of the Guaranty and Lease

Termination Agreement and, as a result of said breach, Plaintiff has been damaged.

47.     By reason of the foregoing, Plaintiff is entitled to a judgment against Mr. Sewell for breach of contract and damages in the amount of no less than $2,219,276.52 plus interest, fees (including attorneys' fees), costs and expenses.

## IV.
## RELIEF REQUESTED

WHEREFORE, Plaintiff requests a final judgment of this Court awarding the following:

1.     On Count One, judgment in its favor and against Campaign in an amount to be proven at trial but no less than $2,219,276.52 plus interest, fees (including attorneys' fees), costs and expenses;

2.     On Count Two, judgment in its favor and against Mr. Sewell in an amount to be proven at trial but no less than $2,219,276.52 plus interest, fees (including attorneys' fees), costs and expenses; and

3.     Such other and further relief as this Court deems just and proper.

Dated: August 27, 2020                **ITO LAW GROUP, P.C.**


By:   /s/ Peter W. Ito
      Peter W. Ito
      1550 Larimer Street, Suite 667
      Denver, CO 80202
      Telephone: (720) 281-5294
      Email: peter@itolawgroup.com

**Attorneys for Five Points Management, Inc.**