IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-2599-RBJ

FIVE POINTS MANAGEMENT GROUP, INC.,

    Plaintiff,

v.

CAMPAIGN, INC., a Delaware corporation and
BRADLEY SEWELL, an individual,

    Defendants.

---

ORDER GRANTING SUMMARY JUDGMENT

---

This matter is before the Court on plaintiff Five Point Management Group, Inc.'s motion for summary judgment. ECF No. 34. For the reasons discussed below, the motion is GRANTED.

## I.    BACKGROUND

On March 1, 2017 plaintiff Five Points Management Group, Inc. subleased its interest in the building at 4052 Watts Street, in Emeryville, California, to defendant Campaign, Inc. ("Campaign") for a period of ten years. ECF No. 1. Mr. Sewell, co-defendant and CEO of Campaign, served as a guarantor of the sublease. *Id.*

On March 10, 2020 the parties entered into a Lease Termination Agreement ("LTA"). *Id.* This agreement required Campaign to vacate the premises and to continue to pay plaintiff the

amounts that would have been due until plaintiff entered a replacement lease.  ECF No. 1-3 at ¶8.

These amounts were to be paid "when and as those amounts would have been due had the

[s]ublease not terminated."  *Id*.  Plaintiff agreed to use reasonable efforts to relet the building.

*Id.* at ¶7.  The LTA also stipulated that plaintiff was not required to accept a replacement lease

that was for a term less than the balance of the original sublease or to accept a replacement lease

with rent less than the fair market rate.  *Id.*  If the replacement lease had a lower rent than

Campaign had been paying, the LTA provided that Campaign would pay the difference in rents

to plaintiff.  *Id.*

On August 19, 2020 plaintiff notified Campaign and Mr. Sewell that they were in default

under the loan agreement for failure to pay rent, utilities, and property taxes.  ECF No. 35.

Plaintiff demanded payment.  *Id.*  Neither Campaign nor Mr. Sewell has made payment.  ECF

No. 1.  Plaintiff alleges $2,219,276.52 in damages from defendants' breach of the sublease and

the LTA.  ECF No. 34-1, ¶12.  This calculation of damages includes property taxes, insurance,

utilities, deferred rent and base rent in the period from March 1, 2019 through February 27, 2027,

the end-date of Campaign's sublease agreement with plaintiff.  *Id.*

## II.   STANDARD OF REVEIW

The Court can grant summary judgment where there is "no genuine dispute of material

fact and the movant is entitled to judgement as a matter of law."  Fed. R. Civ. P. 56(a).  A

dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could

resolve the issue either way."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.

1998).  An issue of fact is material if it is essential to the proper disposition of the claim.  *Id.*

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The movant bears the burden of showing a lack of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In applying this standard, this Court must view the record and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Adler*, 144 F.3d at 670.

### III.    ANALYSIS

#### A.    <u>Choice of Law</u>

"In a diversity action, federal courts must apply the choice-of-law rules of the state in which the suit was brought."  *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1389 (D. Colo. 2013) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941).  This Court sits in Colorado and must apply Colorado's choice-of-law rules.  Under Colorado choice-of-law rules, the Court must apply law chosen by the parties, "unless there is no reasonable basis for their choice or unless applying the law of the state so chosen would be contrary to the fundamental policy of a state whose law would otherwise govern."  *Brown v. Fryer*, No. 12-CV-01740-CMA-KMT, 2013 WL 1191405 at *2 (D. Colo. Mar. 22, 2013) (citing Restatement (Second) of Conflict of Laws § 187 ((Am. Law Inst., 1971)).

"A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as . . . by mistake."  Restatement (Second) of Conflict of Laws § 187 cmt. b (Am. Law Inst. 1971).  "A factor which the forum may consider is whether the choice-of-law provision is contained in an 'adhesion' contract . . . ."  *Id.*  Choice-of-law provisions in adhesion

contracts are usually respected, but "the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent. *Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1274 (D. Colo. 2016) (citing Restatement (Second) of Conflict of Laws § 187 cmt. b (AM. LAW INST. 1971)).

Here, the parties stipulated that the LTA would be "governed by and construed in accordance with the law of the State of California, without giving effect to its principals [sic] of conflicts of laws." ECF No. 1-3 at ¶21. Usually this provision would govern, but defendants have, in their "Response to Plaintiff's Motion for Summary Judgment," asserted that the LTA is unconscionable, a contract of adhesion, and subject of several mistakes of fact, and that they are entitled to recission of the entire contract—presumably including the choice-of-law provision. ECF No. 35. However, defendants do not argue that the choice of law provision is inapplicable. *Id.* They cite exclusively California state law in their arguments on unconscionability and mistake, indicating an acquiescence to the LTA's choice-of-law provision. *Id.* To the contrary, in its reply on the motion for summary judgment, plaintiff cites exclusively Colorado law on the issues of unconscionability and mistake. ECF No. 36. Neither party made any explicit arguments about the choice-of-law provision or which state's substantive law should apply.[1]

The parties appear to have chosen California law in the LTA because the property at issue is in California—that does not seem an unreasonable basis for that choice of law. The

---

[1] Plaintiff dropped a footnote that "a federal court sitting in diversity jurisdiction applies the substantive law of the forum state," but neglected to mention the choice-of-law provision in the LTA or substantive Colorado choice-of-law rules. ECF No. 36, n.2.

Court has not discovered any reason that the application of California law in this case would "be contrary to the fundamental policy of Colorado, the "state whose law would otherwise govern." *Brown*, 2013 WL 1191405, at *2. Though defendants assert that this is an adhesion contract, they do not seem to take issue with the application of California law. Further, though they argue that recission of the contract is appropriate due to mistake, defendants do not argue that the choice of law provision was a product of that mistake. As the parties chose California law to govern the LTA and no party has argued that the choice-of-law provision is inapplicable, this Court will apply California law to substantive issues.

### B.      Breach of Contract and Breach of Guaranty

To prove a breach of contract under California law, a plaintiff must show four elements: a contract existed; plaintiff performed under the contract or was excused from performing; the defendant breached the contract; and damages to plaintiff resulted. *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075 (C.D. Cal. 2017), aff'd, 747 F. App'x 643 (9th Cir. 2019). Guaranty is considered a species of contract—the elements for breach of guaranty are the same required for breach of contract. *Quiksilver, Inc. v. Juelle*, No. CV093535AHMRNBX, 2010 WL 11520196 at *3 (C.D. Cal. Sept. 22, 2010). Nonperformance under a valid contract can be excused if the opposing party materially breached the contract. *eOnline Glob., Inc. v. Google LLC*, 387 F. Supp. 3d 980 (N.D. Cal. 2019).

The parties largely agreed that the LTA is a valid contract (until defendants' submission of their "Response to Plaintiff's Motion for Summary Judgment," neither party disputed the LTA's validity). ECF No. 35. The parties do not dispute that, if the LTA is valid, both

Campaign and Mr. Sewell breached the LTA by failing to make the payments required in that agreement. *Id.* The parties do not dispute that if the LTA is valid, plaintiff has suffered damages. *Id.* The parties are in dispute over two issues: whether plaintiff performed its obligation under the contract to use reasonable efforts to relet the premises and the amount of damages that plaintiff is entitled to. *Id.*

      1.    Liability for Breach of Contract and Breach of Guaranty

Whether plaintiff used reasonable efforts to relet the building is a material fact; if plaintiff failed to perform this obligation under the LTA, defendants' failure to perform their obligations under the LTA would be excused. Plaintiff alleges that it used reasonable efforts to relet the building, while Campaign and Mr. Sewell allege that it has not. ECF 35. There is a dispute of material fact on the breach of contract and breach of guaranty claims—what remains to be determined is whether it is a genuine dispute. For purposes of a summary judgment analysis, a dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670.

      a.    Past Interest in the Building

To show that it used reasonable methods to relet the premises, plaintiff states that Mr. Morris, the real estate agent employed by plaintiff to find a replacement sublessee, testified in a deposition that based on his knowledge and experience plaintiff had used reasonable efforts to relet the premises. ECF No. 34.

Mr. Sewell stated in his deposition testimony that there had been great interest in the lease. He said that he had been approached by three entities (Northbay Networks, NuGen Tec, and a school in the City of Emeryville) interested in the lease. ECF No. 35. Plaintiff claims, and

I agree, that the interest from these companies is irrelevant; all the interest Mr. Sewell saw in the building was in 2019.  The LTA was not signed and executed until March 2020.  ECF No. 1. The rental market changed dramatically in 2020 due to the global pandemic.  Evidence of interest in the lease in 2019 does not translate to an eager rental market in 2020 or 2021.

          b.      <u>Letters of Intent and Mitigation of Damages</u>

The defendants rely on Mr. Morris's deposition statements that he received several letters of intent for a lease of the building, but that none had matured into a replacement sublease.  ECF 34-2 at 15.  However, defendants do not provide any information to show that the failure to proceed with these letters of intent constituted failure to use reasonable methods to relet the building.

Defendants argue that *any* failure to proceed on *any* letter of intent would be unreasonable on plaintiff's part, as plaintiff has a duty to mitigate damages.  ECF No. 35. Failure to mitigate damages is an affirmative defense satisfied when the injured party fails to exercise reasonable care to avoid loss or minimize resulting damages.  *See United States v. Sierra Pac. Indus.*, 879 F. Supp. 2d 1128, 1136 (E.D. Cal. 2012), adhered to on reconsideration, No. CIV S-09-2445 KJM, 2012 WL 2571274 (E.D. Cal. July 2, 2012).  "The duty to mitigate damages does not require an injured party to do what is unreasonable or unpracticable.  *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).  To determine whether the injured party has acted reasonably, courts must judge the efforts "in light of the situation confronting him at the time the loss was threatened and not by the judgment of hindsight.  *Green v. Smith*, 261 Cal. App. 2d 392, 396 (1968).  "The fact that reasonable measures other than the one taken

would have avoided damage is not, in and of itself, proof that the fact that the one taken, though unsuccessful, was unreasonable." *Id.* at 397.

There is insufficient evidence in accordance with the defendants' position to raise a genuine dispute on the defense of failure to mitigate. Defendants present only the bare assertion that the rejection of the letters of intent was an unreasonable failure to mitigate damages. There were reasonable grounds for plaintiff's failure to proceed with these letters of intent. Paragraph seven of the LTA provides that "[i]n no event shall Sublessor be obligated to relet the Premises for a term less than the remaining balance of the term of the Sublease, or at a rent of less than the fair market rate . . . ." ECF No. 1-3 at ¶7. Plaintiff contractually bargained for the right to reject leases that were for a shorter term than the balance of the sublease or for less than the market rate. It was reasonable to rely on these contractual terms and reject letters of interest that did not conform with these requirements. Defendants present no evidence that any of the letters of intent received by Mr. Morris and plaintiff were for the balance of the sublease and fair market value.

Additionally, Mr. Morris testified that, based on his knowledge and professional experience, the methods plaintiff used to relet the building (including the rejection of the letters of intent) were reasonable. ECF No. 34-2 at 15.

c.     <u>Removal of the Sign</u>

Defendants also argue that taking down the sign on the premises advertising it as available for lease was unreasonable. ECF No. 35. They claim that "whether removing the signage was a factor in Five Points not finding a replacement tenant is a disputed material fact." *Id.* Mr. Sewell contends that many of the inquiries he received about the property were attributable to the signage. Mr. Sewell also testified that the property "is adjacent to a street that

sees thousands of people driving by every single day and why would you ever remove a lease sign if you're trying to lease a building…."  ECF 36-2 at 46.

Mr. Sewell testified in his deposition that Mr. Morris said he removed the sign because of plaintiff's concern that having the sign up would lead to a break-in; potential wrongdoers would have notice that the building was likely empty.  ECF 36-2 at 46.  Mr. Morris testified to the methods other than using a sign that he has employed to market the building—he marketed the property online and via cold calls and email blasts.  ECF No. 34-2 at 14.  Mr. Sewell testified that Mr. Morris had not indicated to him that the loss of the signage had created problems in the effort to find a new sublessee.  *Id.*  Mr. Morris testified to only one factor that presented a particular problem in finding a replacement sublessee—the global Covid-19 pandemic.  ECF No. 34-2 at 17.

No reasonable factfinder could find that plaintiff's removal of the sign rendered their search for a replacement sublessee unreasonable. Plaintiff had a legitimate reason, related to its obtaining a replacement lessee, for removing the sign—if there were break-ins, the building or its reputation might be damaged.  The property was marketed during and after the removal of the sign using other methods, such as internet postings, cold calls, and email blasts.  Defendants present no arguments that these methods are unreasonable.  They present no evidence to show that proceeding without the sign was unreasonable.  They present only evidence that the sign was taken down and that Mr. Sewell would not have taken it down had he been in charge of finding a new lessee.  Just because Mr. Sewell would have used one method—using a sign—to lease the

9

building does not mean that plaintiff's alternative methods—internet postings, cold calls, and email blasts—were not also reasonable.

> ### d.  Conclusion

I find that there is no genuine dispute on whether plaintiff used reasonable methods to try to relet the premises.  Defendants put forward evidence of interest in the building in 2019, the letters of intent, and the removal of the sign.  However, the interest in the building in 2019, before the building was vacant, is irrelevant.  Defendants failed to present any evidence that plaintiff's failure to proceed to a lease from the letters of intent was unreasonable or that the removal of the sign was unreasonable—they just asserted that they were.

Plaintiff presented testimony from Mr. Morris that it had used reasonable methods in its attempts to relet the premises and that the lack of interest in the space was due to the coronavirus pandemic.  Mr. Morris testified to the methods he was employing to market the premises; namely, internet postings, cold calls, and email blasts.  Defendants did not argue that any of those methods were unreasonable.

On this record, there is not sufficient evidence on each side that a rational trier of fact could resolve the issue either way.  The evidence presented by the defendants on plaintiff's reasonableness in reletting the building was either irrelevant or bare assertion.  None of the evidence presented by the plaintiff to show reasonableness was contested by evidence from the defendants.  Campaign and Mr. Sewell fail to raise a genuine dispute of material fact on the breach of contract and breach of guaranty claims.

2. <u>Damages</u>

The parties do not dispute that if the LTA is valid and plaintiff has performed its obligations under it, plaintiff is owed damages.  The parties only dispute the extent of the damages.  Under the LTA, which incorporates the sublease agreement and master lease, plaintiff, after noticing defendants of default, is entitled to the unpaid rent earned at the time of the termination of the sublease, the amount of rent that would have been earned between the termination of the lease and the time of the award less the amount lessee can prove could have been reasonably avoided, the amount of rent, determined at the time of the award, for the balance of the term after the time of award exceeds award less the amount lessee can prove could have been reasonably avoided, and consequential damages.  ECF No. 3-1 at ¶13.2.  Under California statute, the lessor would have the exact same remedies for the breach of a lease agreement.  Cal. Civ. Code § 1951.2 (West 1971).

Plaintiff asserts that defendants owe $2,219,276.52 in damages, which includes rent from Campaign's default in 2020 through 2027 (when the original sublease was set to end).  ECF No. 34.  This calculation also includes property taxes and insurance costs, which Campaign was obligated to pay under the sublease agreement.  ECF No. 34-1 at ¶9.  Defendants respond that the final amount of damages cannot be known until a replacement sublessee is found (or the original sublease expires). ECF No. 35.

There is not a genuine dispute of material fact here.  Defendants have failed to show that plaintiff could have reasonably avoided any of the damages that have so far accrued.  I found

above that their arguments regarding plaintiff's failure to mitigate damages and failure to use reasonable methods to relet the premises did not raise a genuine dispute of material fact. Plaintiff is entitled to unpaid rent, property taxes, and insurance costs through 2027—the master lease (incorporated through the sublease agreement and LTA) provides that plaintiff can recover the damages that have accrued before termination of the lease, between termination of the lease and the time of award, and from the award forward for the balance of the lease, as well as consequential damages.  That a replacement lessee may be found in the future does not affect the award in this case: both the master lease and California statute provide that a lessor can recover damages for the balance of a lease after an award less the amount that lessee can show could have been reasonably avoided.

Defendants raised no dispute to plaintiff's damage calculations other than the uncertainty of future mitigation of damages.  ECF No. 35.  Defendants did not contest plaintiff's calculation of damages.  *Id.*  Plaintiff should be awarded damages of $2,219,276.52.

### C.   **Unconscionability and Mistake**

#### 1.   Defendants' Failure to Raise These Defenses In Their Initial Pleadings

Campaign and Mr. Sewell, in their "Response to Plaintiff's Motion For Summary Judgment," dispute the validity of the LTA.  They contend that the LTA is invalid due to unconscionability or mistake.  These contract defenses were never raised in prior pleadings— either before or after the close of discovery.  Campaign and Mr. Sewell should not, five months after their final amended answer was filed, assert what amount to two new defenses in their response to plaintiff's motion for summary judgment.

The Federal Rules of Civil Procedure provide that a party's response to a pleading must "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). "The general rule is that a party waives its right to raise an affirmative defense at trial when the party fails to raise the defense in its pleadings." *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) (citing *Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (11th Cir.1988)).

However, in determining whether a defense has been waived under Rule 8(c), "we must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule." *Id.* The purpose of Rule 8(c) is to guarantee that the opposing party has notice of issues that might be raised at trial so they can be prepared to litigate the issue. *See id. Creative Consumer Concepts, Inc. v. Kreisler* is illustrative on this point. There, the plaintiff raised an affirmative defense to a counterclaim in its supplemental brief filed on the first day of trial. *Id.* The trial court allowed presentation of evidence on that defense, and the Tenth Circuit affirmed, writing that, though it would have been preferable for the plaintiff to raise the defense earlier, the defendant had notice of the defense and suffered no prejudice from the late pleading. *Id.* The purpose of Rule 8(c) was not frustrated by allowing the plaintiff to raise the defense later in the litigation process. *Id.*

Here, the situation is like that in *Creative Consumer Concepts, Inc*. The correct time for defendants to raise the potential invalidity of the LTA was in its answer to the complaint. The information necessary to determine if the LTA was unconscionable was available to defendants before any discovery—they had access to the text of the LTA and, as parties to the contract, knew the circumstances in which it had been signed. Nor does it appear that any mistake was

discovered during discovery.  However, defendants did raise the defenses early enough in

litigation to give plaintiff sufficient notice to prepare to defend them.  As Plaintiff would face no

unfair surprise at trial on these issues, defendants' failure to comply with Rule 8(c) is not fatal in

this instance.

 2.  Unconscionability

 The finding of unconscionability is a question of law.  *Jones v. Wells Fargo Bank*, 112

Cal. App. 4th 1527, 1539 (2003).  For a contract to be unconscionable under California law,

there must have been "an absence of meaningful choice on the part of one of the parties together

with contract terms which are unreasonably favorable to the other party."  *Sanchez v. Valencia

Holding Co.*, LLC, 353 P.3d 741, 748 (Cal. 2015).  Courts can sever an unconscionable

provision or refuse to enforce the contract in its entirety.  *Veliz v. Cintas Corp.*, No. C 03-1180

SBA, 2004 WL 2452851, *21 (N.D. Cal. Apr. 5, 2004), modified on reconsideration, No. 03-

01180(SBA), 2005 WL 1048699 (N.D. Cal. May 4, 2005).  There is both a procedural and

substantive element to the finding of unconscionability.  *Jones*, 112 Cal. App. 4th at 1539.

 Defendants fail to allege sufficient facts to support either a procedural or a substantive

finding of unconscionability.  They contend that the LTA provided only a unilateral benefit to

plaintiff, and no benefit to them.  ECF No. 35.  They argue that their lack of representation in the

negotiations with plaintiff on the LTA indicates the presence of procedural unconscionability,

and they assert that the LTA is a contract of adhesion.  *Id.*

 a.  Substantive Unconscionability

 The LTA was not substantively unconscionable.  The substantive element of

unconscionability is present when a contractual provision "reallocates risks in an objectively

unreasonable or unexpected manner" and "shocks the conscience." *Id.* On the substantive

element, "while an agreement may favor one party, when it favors the party with greater

bargaining power, it should be viewed with suspicion and reviewed carefully. *Veliz*, 2004 WL

2452851, at *21.

The argument that the LTA only benefitted plaintiff is defendants' only argument that the

LTA is substantively unconscionable. It is true that many of the terms of the LTA focus on

defendants' obligations. *See* ECF No. 1-3 at ¶¶3-6. However, plaintiff has obligations under the

LTA as well—it must relet the premises using reasonable methods, bear the costs of reletting the

premises, and must pay attorney fees, costs, and expenses of litigation it loses. ECF No. 1-3 at

¶¶7, 10, 16. That one party has more obligations or constraints under a contract does not render

the contract unconscionable. This contract certainly does not impose unilateral obligations on

the defendants. The LTA is a contract created in anticipation of defendants' breach of the

sublease. In that context, the fact that defendants have more obligations than plaintiff is not

surprising—it certainly is not an unreasonable or unexpected manner of allocating risk, nor does

it shock the conscience. The LTA is not substantively unconscionable.

### b. Procedural Unconscionability

Nor is the LTA procedurally unconscionable. Under California law, the analysis of

whether a contract is procedurally unconscionable begins with determining whether the contract

is a contract of adhesion. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 689

(2000). A contract of adhesion is "a standardized contract which, imposed and drafted by the

party of superior bargaining strength, relegates to the subscribing party only the opportunity to

adhere to the contract or reject it." *Jones*, 112 Cal. App. 4th at 1539 (quoting *Neal v. State Farm*

*Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961).  Even if a contract is not one of adhesion, it still may be procedurally unconscionable if there is oppression or surprise.. *Id.*  Oppression occurs "where a contract involves lack of negotiation and meaningful choice.  *Id.*  Surprise occurs when "the allegedly unconscionable provision is hidden within a prolix printed form."  *Id.*

First, I will make the initial determination that this is not an adhesion contract.  It is not a standardized contract—it was written to deal with the specific desire of defendants to terminate the sublease agreement.  ECF No. 1-3 at ¶E.  Defendants argue that they believed the only way out of the sublease agreement was by signing the LTA.  *Id.*  However, defendants themselves admit that there were negotiations over the LTA, though they did not have representation in those negotiations.  *Id.*  For an adhesion contract to exist, defendants would have had no opportunity to negotiate.  That was not the case.

Defendants' lack of representation in the LTA negotiations also did not render the LTA procedurally unconscionable.  Though some courts consider the presence of counsel in the negotiations of a contract to create a presumption against unconscionability (*see, e.g.*, *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, n. 3 (1996)), the absence of counsel does not create a presumption of unconscionability.  The LTA specifically provides that both plaintiff and defendants had the opportunity to "consult with and receive the advice of counsel."  ECF 1-3 at ¶13.  This was a commercial contract negotiated between businesses and businessmen.  Defendants' failure to act on this opportunity does not render the LTA unconscionable.

c.    Conclusion

The LTA is not unconscionable.  It is neither substantively nor procedurally unconscionable.  The terms are not so unequal that it shocks the conscience, the parties negotiated the contract, and there were no hidden unconscionable provisions.

3.    Mistake

Next, defendants argue that the contract should be rescinded because they made mutual or unilateral mistakes.  ECF No. 35.  First, Mr. Sewell and Campaign assert that they believed the only way to get out of the sublease agreement was to sign the LTA.  *Id.*  Second, they argue that Mr. Sewell signed the LTA under the mistaken belief that the purpose of signing the LTA was so the Walt Disney Company ("Disney") could move into the premises.  *Id.*

The California Civil Code defines mistake of fact as "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: (1) [a]n unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or (2) [b]elief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."  Cal. Civ. Code § 1577 (West 2021).  Without evidence that the contract was premised on the existence of a future contingency, the defense of mistake of fact must be premised on past or present facts.  *Mosher v. Mayacamas Corp.*, 215 Cal. App. 3d 1, 3 (1989).  The party alleging the mistake bears the burden of proving that the mistake occurred.  *Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204, 1212 (C.D. Cal. 2020).

"A factual mistake by one party, or unilateral mistake, affords a ground for rescission in some circumstances." *Donovan v. RRL Corp.*, 27 P.3d 702, 714 (Cal. 2001), as modified (Sept. 12, 2001). Generally, for a contract to be reformed under California law for a unilateral mistake, a party must show "they made a mistake at the time of contracting[] and that the mistake was known to or suspected by the defendants." *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1055 (C.D. Cal. 2008), aff'd sub nom, *Spiegler v. Home Depot USA, Inc.*, 349 F. App'x 174 (9th Cir. 2009). When a party alleges that the mistake was not known or caused by the other party, to prove recission or reformation of the contract is warranted, the party seeking to prove unilateral mistake must show: "(1) the defendant made a mistake regarding a basic assumption upon which the defendant made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the defendant; (3) the defendant does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." *Donovan*, 27 P.3d at 714

a.  Defendants' Mistaken Belief in Lack of Choice in Entering the LTA

It is unclear, based on defendants' pleadings, whether they allege that this mistake was mutual or unilateral. They cite law regarding mutual mistake but plead no facts to allege that plaintiff was operating under the same mistakes of fact. ECF No. 35. They also cite law supporting recission under a unilateral mistake when that mistake is known to the other party or encouraged by the other party. *Id.* However, the facts they have asserted in raising mistake show only that Mr. Sewell and Campaign believed that they had no choice but to enter the LTA—they presented no factual allegations that plaintiff was under the same mistaken belief or that plaintiff knew of defendants' mistaken belief. *Id.* Construing the facts plead by defendants

18

on this mistake in the light most favorable to them, they have alleged only a unilateral mistake that plaintiff had no knowledge of and did not foster or encourage.  Application of the *Donovan* test for unilateral mistake is appropriate in these circumstances.

Recission is not available for this unilateral mistake.  Enforcement of the LTA in light of this mistake would not have been unconscionable as required by California law. Unconscionability under the fourth *Donovan* factor (following the Restatement (Second) of Contracts approach) is not the same inquiry as general unconscionability of a contract or contract term, but it is informed by that inquiry.  Restatement (Second) of Contracts § 153 cmt. c (AM. LAW INST. 1971).  However, unconscionability in this context is still a substantial burden borne by the mistaken party.  *Id.*  The Restatement provides that the mistaken party must ordinarily show "not only the position he would have been in had the facts been as he believed them to be but also the position in which he finds himself as a result of his mistake."  *Id.*

Defendants have not provided any facts to reach their substantial burden of showing that enforcement of the LTA in light of their mistake would be unconscionable.  They introduce no facts showing where they would have been had they truly had no option to get out of the sublease other than signing the LTA.  Common sense tells the Court that they would be in the exact same position as they are now: obligated to pay at least the same amount of money for breach of the sublease agreement as they are currently obligated to pay under the LTA.  Regardless, defendants have not raised any facts to support a finding of unconscionability on the fourth *Donovan* factor.  Construing the facts in the light most favorable to the defendants, they are not

19

entitled to recission for unilateral mistake based on their mistaken belief that they had no choice but to enter the LTA.

    b. <u>Defendants' Belief that the Purpose of the LTA was to Allow Disney to Move into the Premises</u>

  Even construing the assertion that defendants believed the purpose of the LTA was to allow Disney to move into the premises in the light most favorable to defendants, they do not properly raise the defense of mistake of fact.  Defendants cannot rescind the LTA under the doctrine of unilateral mistake of fact because Mr. Sewell's belief that Disney would be the replacement lessee at the premises does not qualify as a mistake of fact under Section 1577 of the California Civil Code.  Mr. Sewell's mistake was not about a "fact past or present," or the "present existence of a thing material to the contract," or the "past existence of such a thing." Cal. Civ. Code § 1577 (West 2021).

  Mr. Sewell's mistake was about a future contract between plaintiff and Disney. Defendants plead only that Mr. Sewell believed that "the purpose of signing the Termination Agreement was in order for the Walt Disney Company to move into the premises."  ECF No. 35. They do not plead that there was any present or past fact related to a replacement sublease with Disney about which they were mistaken.  Defendants have not presented sufficient facts to raise the defense of mistake of fact on Mr. Sewell's mistake regarding Disney.

<strong>ORDER</strong>

  1. Five Point Management Group, Inc.'s motion for summary judgment, ECF No. 34, is GRANTED as to both its first claim for relief (breach of contract against Campaign) and its second claim for relief (breach of guaranty against Mr. Sewell).

20

2.      As the prevailing party, plaintiff is awarded its reasonable costs pursuant to Fed.

R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

3.      Final Judgment will enter accordingly, subject to amendment if the plaintiff

pursues an award of attorney's fees.

4.      The possibility of settlement was mentioned in the parties' proposed Scheduling

Order and again during the recent Trial Preparation Conference.  The Court urges the parties to

raise that subject again now, possibly with a professional mediator's assistance.  Considerations

might include the amount of damages awarded, the prospects of collection from the corporate or

the individual defendant, the possibility that plaintiff will at some future point find a sublessee

for the space on either a short or long term basis, thereby arguably achieving a partial windfall to

the extent that this judgment is satisfied, the prospect of an appeal, the continuation of

accumulation of litigation costs, and the benefits of putting the dispute behind the parties.

DATED this 20th day of August, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge