IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02599-RBJ

FIVE POINTS MANAGEMENT GROUP, INC.,

    Plaintiff,

v.

CAMPAIGN, INC., a Delaware corporation and
BRADLEY SEWELL, an individual,

    Defendants.

---

ORDER REGARDING TRAVERSE

---

**Background.**

On August 20, 2021, the Court entered an Amended Final Judgment in favor of the plaintiff against both defendants in the amount of $2,219,276.52 plus post-judgment interest. The judgment was entered pursuant to the terms of a Lease Termination Agreement and incorporated documents between plaintiff and defendant Campaign Inc. ("Campaign"), the performance of which had been guaranteed by defendant Bradley A. Sewell.

In an effort to collect its judgment, plaintiff served a writ of garnishment on Hartman Art Studios LLC ("Hartman"). ECF No. 62. In its answer to the writ of garnishment, filed on May 18, 2022, Hartman indicated that Campaign had made a security deposit of $27,000 to secure a lease of Hartman's property, but that Hartman was claiming a right of setoff against the deposit. *See* ECF No. 64.

**Traverse**.

Plaintiff then filed a traverse of Hartman's answer, essentially challenging Hartman's right to retain Campaign's security deposit. ECF No. 65.[1] Plaintiff informs the Court that Campaign had entered into a lease with Hartman on May 1, 2020. *Id.* at 5. This was a five-year lease of property in Denver, Colorado. *See* ECF No. 65-3. The lease required Campaign to provide a $27,000 security deposit to secure the performance of Campaign's obligations under the lease, including unpaid rent. *Id.* at 4, ¶¶10-11. The security deposit or any portion not applied pursuant to the provisions of the lease must be returned within 60 days after the expiration of the lease. *Id.* at ¶12.

The lease was terminated after Campaign was dissolved on December 18, 2020. At that time Campaign had made three monthly lease payments totaling $40,500. It had failed to pay for five additional months and was delinquent in the amount of $67,500 for those months. ECF No. 71-1 at 2, ¶¶9-13 (Affidavit of Carl Hartman, the owner of Hartman). Hartman retained Campaign's security deposit. *Id.* ¶17. Effective August 1, 2021 Hartman re-rented the space to Texture Supply Inc., another company operated by Mr. Sewell. Texture Supply was required to post a $27,500 security deposit but has not yet done so. *Id.* ¶¶ 18-22.

I note that none of the foregoing facts is disputed. However, in a deposition taken on April 26, 2022, Mr. Hartman testified that he did not know where the security deposit was or whether it had been returned to Campaign. *Id.* at 7. Mr. Sewell testified in a deposition taken

---

[1] The traverse is excessively long and not in compliance with the Court's practice standards concerning motions. However, the Court has considered it.

the next day that the security deposit had not been returned; and he assumed that it had been applied to unpaid rent. *Id.*

Immediately after Hartman filed its answer to the writ of garnishment, plaintiff requested that Hartman provide the date the setoff occurred and a copy of the written statement accounting for any portion of the security deposit that was not returned, citing Colo. Rev. Stat. § 38-12-103(1). Hartman responded, through counsel, that it did not know the date of the setoff, and that there was no formal notice or accounting because the parties to the lease agreed that the security deposit could be retained. *Id.* at 8-9 and ECF No. 65-8.

Plaintiff was not satisfied. It claims that the garnishee's answer to the writ of garnishment was "false and erroneous" for multiple reasons based on the following "undisputed facts:" (1) Campaign posted the security deposit; (2) the lease between Campaign and Hartman Art Studios terminated at the latest on August 1, 2021; (3) as of April 26, 2022 the garnishee did not know what happened to the security deposit; (4) as of April 27, 2022 Mr. Sewell acknowledged that the garnishee had not returned the security deposit; (5) the current lessee, Texture Supply, had not posted a security deposit; (6) there was no agreement between Campaign and Hartman regarding disposition of the security deposit; and (7) the garnishee did not provide written notice accounting for the disposition of the security deposit. ECF No. 65 at 9. I agree that these facts are undisputed with the exception of number 6 which is sharply disputed.

According to plaintiff, the only conclusions that can be drawn are that (1) Mr. Sewell lied under oath in his deposition; or (2) the setoff occurred between April 28 and May 18, 2022 ("the

gap period"); or (3) there was no setoff. ECF No. 65 at 10. He submits that only the third possibility is plausible because there is no evidence that Mr. Sewell lied, and it makes no sense that a setoff occurred during the gap period. The latter supposition is based on the facts that the garnishee could not identify when a setoff occurred when asked just 27 days later, the security deposit was not identified in Mr. Sewell's bankruptcy filing six months earlier; and the garnishee did not deliver a written statement accounting for the security deposit as purportedly required by Colo. Rev. Stat. § 38-12-103(1). *Id.* at 10-12.

Plaintiff goes two steps further. First, it argues that Campaign is entitled to seek treble damages against Hartman plus attorney's fees because Hartman's retention of Campaign's security deposit was not only wrongful but willfully wrongful. *Id.* at 14-15. Second, Hartman's purported obligation to Campaign for treble damages and attorney's fees is a "chose in action" subject to garnishment. *Id.* at 15-18. Accordingly, plaintiff contends that its writ of garnishment reaches and attaches not only Hartman's debt to Campaign for the security deposit but also Hartman's alleged debt to Campaign for treble damages and attorney's fees. *Id.* at 18. Plaintiff thus asks the Court to enter judgment on its traverse and award plaintiff $108,000 plus attorney's fees against Hartman. *Id.* at 19-20.

**Response**.

Hartman provides affidavits from Mr. Hartman and Mr. Sewell. According to Mr. Hartman's affidavit, Hartman was entitled under the lease to apply Campaign's $27,000 security deposit toward its outstanding rent obligation; and Mr. Sewell agreed. ECF No. 71-1 at ¶¶14, 15. Hartman agreed that it would not attempt to enforce or pursue Mr. Sewell's personal guarantee

4

of the lease. *Id.* at ¶16. Therefore, Hartman saw no reason for an accounting of the security deposit. *Id.* ¶17. When Hartman re-leased the property, Texture Supply was required to tender a $27,000 security deposit. It has not done so. However, Hartman has not credited Campaign's security deposit toward Texture Supply's obligation. *Id.* ¶21-23.

According to the affidavit of Mr. Sewell, ECF No. 71-2, Campaign defaulted on its lease with Hartman after Campaign dissolved, the result of the loss of a supply contract. *Id.* ¶¶10-14. The lease provided that Hartman could apply Campaign's $27,000 security deposit towards the outstanding lease obligation. *Id.* ¶15. He agreed that Hartman would keep the security deposit as a setoff, and that Hartman in turn would not pursue Mr. Sewell's personal guarantee. *Id.* ¶¶16, 17. Because of the agreement, he did not expect to receive any written accounting from Hartman concerning the security deposit. *Id.* ¶18.

Regarding plaintiff's argument that Hartman violated Colo. Rev. Stat. § 38-12-103(1), Hartman responds that the statute has no application to the commercial lease agreement in this case. The statute was "designed to assist tenants in vindicating their legal rights and to equalize the disparity in power which exists between landlord and tenant." *Mishkin v. Young,* 107 P.3d 393, 399 (Colo. 2005). ECF No. 71 at 6-9. Even if the statute did apply, a garnishee may set off against the garnished property any claim it has against the debtor per Colo. R. Civ. P. 103 § 10. ECF No. 71 at 9-10. Moreover, Hartman entered into an arms-length agreement that Hartman would retain the $27,000 security deposit as a setoff against more than $67,500 in past due rent, as confirmed by the principals of both entities. Therefore, were Campaign to demand the $27,500 from Hartman, its claim would fail as a result of waiver. *Id.* at 10-11. Finally, while

plaintiff characterizes Hartman's purported debt to Campaign as a garnishable "chose in action," the claim for treble damages is a statutory penalty, not a chose in action. A chose in action must be a contractual liability. *Id.* at 11-13.

Hartman asks the Court to award attorney's fees to it and against plaintiff pursuant to Colo. R. Civ. P. 103(8)(b)(5).

**Reply**

Plaintiff has filed a 30-page reply. That is so far in excess of the Court's practice standard page limit that I have disregarded everything beyond the first five pages. Plaintiff challenges the credibility of Mr. Sewell's affidavit and implies that Mr. Hartman's affidavit is also suspect due to his personal and business relationship with Mr. Sewell. ECF No. 72 at 2-4. In any event, Hartman has cited no case law supporting its position that Colo. Rev. Stat. § 38-12-103(1) does not apply to a lease between two business entities. The "clear and unambiguous language" of the definitions in the statute shows that it does apply to the lease between Campaign and Hartman. *Id.* at 1-2, 4-5.

**Conclusions**

First, plaintiff has come forward with no evidence that Hartman and Campaign did not reach an agreement that Campaign would retain the security deposit as a setoff against Campaign's unpaid rent in exchange for Hartman's agreement not to pursue a claim against Mr. Sewell under his personal guaranty. Indeed, Hartford had the right to apply the security deposit to the unpaid rent under the unambiguous terms of the lease agreement between Campaign and

Hartman. Plaintiff's assertion that Mr. Hartman and Mr. Sewell are misrepresenting that fact has no basis in any fact brought to the Court's attention.

Second, the Court agrees with Hartman that the Security Deposits Act, Colo. Rev. Stat. § 38-12-101 *et seq.,* and, in particular, its requirement that a landlord provide a tenant with a written accounting for any portion of the tenant's security deposit that the landlord retains, does not apply here. The statute requires that a "landlord" return the full "security deposit" to the "tenant" within one month after the termination of the lease unless the lease agreement specifies a longer period. "If actual cause exists for retaining any portion of the security deposit, the landlord shall provide the tenant with a written statement listing the exact reasons for the retention of any portion of the security deposit." The willful retention of a security deposit in violation of this section shall render a landlord liable for treble the amount of that portion of the security deposit wrongfully withheld from the tenant, together with reasonable attorney's fees and court costs." § 38-12-103(3)(a).

However, the term "security deposit" means "any advance or deposit of money, regardless of its denomination, the primary function of which is to secure the performance of a rental agreement for a residential premises or any part of a residential premises." Colo. Rev. Stat. § 38-12-102(6). "Residential premises" means " a dwelling unit, the structure of which the unit is a part, and the common areas." *Id.* § 38-12-502(8). "Dwelling unit" is "a structure or the part of a structure that is used as a home, residence, or sleeping unit by a tenant." *Id.* § 38-12-502(3). The term "tenant" is defined as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." Colo. Rev. Stat. § 38-12-502(9).

Thus, the statute applies, by the plain meaning of its terms, to residential leases between a landlord and an individual tenant or tenants. It does apply to a commercial lease between businesses. Moreover, by the statute's own terms, "[n]othing in this section shall preclude the landlord from retaining the security deposit for nonpayment of rent . . . ." Colo. Rev. Stat. § 38-12-103(1).

The Court finds that there are no genuine disputes of material fact that preclude a decision on the traverse without a trial. It concludes that plaintiff's effort to garnish Hartman's purported debt to Campaign fails. There was no debt because the security deposit was properly set off against Campaign's debt to Hartman for nonpayment of rent. The Court finds that plaintiff's effort to garnish Hartman's purported obligation to pay treble damages to Campaign because of Hartman's willful retention of Campaign's security deposit in violation the Security Deposits Act fails on multiple grounds including that the statute does not apply; that even if it did apply, it was not violated; and that, in any event, plaintiff did not demonstrate that Hartman's purported obligation to pay treble damages to Campaign was ripe; or that it was a chose in action that could be garnished; or that plaintiff had standing to garnish it.

**Order**

Plaintiff's traverse, ECF No. 65, is DENIED. If Hartman wishes to pursue its claim for attorney's fees against plaintiff, it may file an appropriate motion within 30 days but only after the parties confer in good faith and attempt to resolve the issue. Any motion must address, among other things, whether Colo. R. Civ. P. 103(8)(b)(5) is procedural or substantive for *Erie* purposes; what standard, if any, has been recognized by Colorado state or federal courts for

awarding attorney's fees under that rule; whether the standard has been met here; and if Hartman is entitled to any fee award, what the reasonable amount is. If a motion is filed and is fully briefed, the Court would hold a hearing on entitlement to, and the reasonable amount of, any attorney's fees.

DATED this 16th day of February, 2023.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge